WILLIAM F KAETZ
437 Abbott Road
Paramus NJ 07652
201-753-1063
Plaintiff

CLERK
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

2020 AUG -7  P 12: 01

WILLIAM F KAETZ
Plaintiff

vs.

THE UNITED STATES et al

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

Case No.: 2:19-cv-08100-CCC-JBC

**MOTION FOR RECUSAL OF**
**JUDGE CLAIRE C. CECCHI**

Assigned to:
Judge Claire C. Cecchi

Referred to:
Magistrate Judge James B. Clark

To:
Chief Judge D. Brooks Smith
U.S. Court of Appeals Third Circuit
21400 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

Chief Judge Freda L. Wolfson
U.S. District Court District of New Jersey
Clarkson S. Fisher Building & U.S.
Courthouse, Court Room: 5E
402 East State Street
Trenton, NJ 08608

Judge Claire C. Cecchi
Martin Luther King Building
& U.S. Courthouse court room: MLK 5b
50 Walnut street
Newark, NJ 07101

Judge James B. Clark, III
Martin Luther King Building
& U.S. Courthouse
50 Walnut street
court room: MLK 2A
Newark, NJ 07101

Martin Luther King Building
& U.S. Courthouse
Attention Court Clerk
50 Walnut Street Room 4015
Newark, NJ 07101

Office of the United States Attorney
970 Broad Street, Suite 700
Newark, NJ 07102

Articles I, II, and III respectively define the tenures, including the conditions that can terminate tenure, for the principal legislative, executive, and judicial officials. For example, Article I provides that a Senator's tenure terminates upon the expiration of a six-year term, by "Resignation, or otherwise," or (in the case of a Senator appointed to fill a vacancy) upon "the next Meeting of the [state] Legislature." Similarly, Article III conditions a judge's tenure on continued "good Behaviour"; the clear implication is that misbehavior can terminate a judge's stay in office.

In addition to other tenure-terminating contingencies, Article II, Section 4 provides for impeachment as an alternative means of removal: "The President, Vice President and all civil officers of the United States, shall be removed from office on impeachment for, and conviction of, treason, bribery, or other high crimes and misdemeanors." This additional means of removal does not negate or displace other tenure-terminating provisions. Everyone concedes this point with respect to executive officials; no one thinks that because a Secretary of State can be impeached, he or she can be removed only through impeachment. There is no reason for a different conclusion with respect to judges. In fact, the impeachment provisions do not single out or even expressly mention judges: like Secretaries of State, judges are simply included in the general category of "civil officers of the United States."

Nor does Article III's good behavior provision suggest that it merely cross-references Article II's impeachment provision. To the contrary, the "good Behaviour" requirement is manifestly not identical to the standard for impeachment: "treason, bribery, or other high crimes and misdemeanors." The separate standards corroborate what the natural reading of the separated impeachment and "good Behaviour" provisions already suggests, namely, that these provisions refer to independent tenure-terminating contingencies.

Those who think judges may only be removed by impeachment might suppose that history reveals that "good Behaviour" was a term of art that meant something like "tenure for life defeasible only by impeachment." History actually proves that good behavior was independent of impeachment.

## II.     INDEPENDENT CONCEPTS: "GOOD BEHAVIOUR" TENURE AND IMPEACHMENT

In English law, good behavior (quamdiu se bene gesserit) was a familiar legal term commonly used to describe tenure in such items as property, offices, employments, and licenses. The term meant that possession of the item would continue until the holder was shown, in a judicial proceeding, to have misbehaved. A grant during good behavior was distinguished from appointment during pleasure (durante bene placito). Thus, someone granted tenure during pleasure could be removed at will by the grantor, but someone granted tenure during good behavior could be removed only upon being convicted of misbehavior in a judicial proceeding. This understanding was affirmed over and over again during the seventeenth and eighteenth centuries. Contrary to what one might suppose, good behavior tenure was not something peculiar to judges, or even to public officials. Private parties could and did grant good behavior tenure.

The same understandings prevailed in English colonies. On the eve of the Revolutionary War, for example, John Adams engaged in a spirited public debate with William Brattle about the tenure of judges. Notwithstanding their other differences, both men agreed that if a judge was appointed during good behavior, then he could be removed only (as Adams said) upon a "hearing and trial, and an opportunity to defend himself before a fuller board, knowing his accuser and accusation."

Impeachment, by contrast, was a procedure by which someone could be criminally prosecuted in a legislature. Impeachment prosecutions were not exclusively limited to government officials, and the punishment following a successful prosecution did not consist only of removal from office; rather, an impeached person might suffer a variety of sanctions, including execution.

During the seventeenth and early eighteenth centuries, impeachment was not a procedure for determining misbehavior. In England, for example, the preferred procedure for adjudicating judicial misbehavior was the writ of scire facias. Likewise, when private parties with good behavior tenure were accused of misbehaving, those accusations were judged in the ordinary courts and not before Parliament.

Across the sea, some Americans in the late eighteenth century began to regard impeachment as a possible procedure for determining whether someone had misbehaved. Nonetheless, Americans clearly did not confuse or conflate impeachment with removal for breach of a good behavior condition. Some state constitutions expressly allowed for removal of officials with good behavior tenure in the ordinary courts, and some granted good behavior tenure even though they did not provide for impeachment at all.

The Constitution limited the scope of impeachment (by providing that the punishment for impeachment would be limited to removal from office) but it contains no hint that the Founders meant to modify the long-established meaning of good behavior tenure. To the contrary, the adoption of the Constitution was bookended by federal laws that reflected the traditional understanding. The 1787 Northwest Ordinance granted territorial judges good behavior tenure. Given that the Continental Congress was a unicameral legislature without an impeachment power, this act surely did not contemplate that impeachment would be the method of determining misbehavior. And the 1790 Crimes Act provided that a judge convicted of taking a bribe would,

by virtue of the conviction, be "forever . . . disqualified to hold any office of honour, trust or profit under the United States." In other words, conviction alone would operate to deprive the judge of office.

### III.     JUDICIAL INVESTIGATIONS AND PROSECUTIONS

Our reading of Article III's grant of good behavior tenure may be hard for some to swallow, especially those with muscular conceptions of judicial independence. Others, however, may embrace a more historically grounded and nuanced account of judicial independence. For example, members of Congress recently proposed an independent Inspector General for the judicial branch. Some prominent judges, including Justice Ruth Bader Ginsburg, have hinted that there is something seriously amiss with this proposal. After all, how can judges remain independent if they stand in constant fear of an Inspector General investigation?

There is nothing constitutionally suspect about government officials investigating allegations of judicial misconduct and then making reports to Congress and the executive branch. Under any reading of the Constitution, the political branches have the authority to investigate and sanction judges. The chambers of Congress can impeach, convict, and remove based on proper evidence of high crimes and misdemeanors. And whatever Congress decides, the executive may prosecute any judges whom it believes has violated the law. The proposed Inspector General would merely make it easier to prosecute and convict miscreant judges. Moreover, under our reading of good behavior, information gathered by the Inspector General also could be used to prove in court that a judge had misbehaved and had thereby violated the terms of her tenure.

But what about the cherished independence of federal judges? Too much emphasis has been laid on the independence of judges and not enough on the Constitution's provisions that promote judicial accountability, which include the grant of life tenure subject to termination for

misbehavior. Judges do enjoy a certain type of independence—they cannot be punished for the judgments they issue. But the Constitution makes clear that federal judges do not have an absolute or a boundless independence. If an Inspector General would further judicial accountability, that fact counts in favor of the Inspector General proposal.

## IV.  JUSTICE DELAYED IS JUSTICE DENIED

Plaintiff submits this Motion to inform you that the above cases have been ripe for judgement for months. "Justice delayed is justice denied" is a legal maxim. It means that if legal redress or equitable relief to an injured party is available, but is not forthcoming in a timely fashion, it is effectively the same as having no remedy at all. I believe I am being prejudiced for being a prose litigant and being right, the justice system does not want a prose to win. These are simple cases; I see no other reason for such a long delay other than to spoil the cases and bias me.

1.  Case No. 2:16-cv-09225-CCC-MF, KAETZ v. EDUCATIONAL CREDIT MANAGEMENT CORPORATION et al filed 12/13/16 – Two Hundred and Forty-six Days (246 days) overdue, then dismissed on clearly fraudulent misconceptions of law with misquotes of the Constitution, statutes, and court rules, and with the use of mere court case dicta. A clearly biased order that is being appealed. Judge Claire C. Cecchi's actions are inappropriate, oppressive, and Unacceptable Behavior.

2.  Case No. 2:19-cv-08100-CCC-JBC, KAETZ v. THE UNITED STATES et al filed 03/07/19 - Two Hundred and Twenty-Five Days (225 days) overdue. Then dismissed with an order to re-re-file the complaint claiming pushing socialism and advocating against the U.S. Constitution does not harm me, it is a joke, clearly not what a federal Judge's job is. Plaintiff complied within 30 days, now what? Have Judge Claire C. Cecchi sit on it for another year? I do not trust her to do

her job at all. Judge Claire C. Cecchi's actions are inappropriate, oppressive, Unacceptable Behavior and evidence of being unfit to be a Judge.

3.   Case No. 2:18-cv-14782-CCC-JBC, KAETZ et al v. COURT OF COMMON PLEAS OF MONROE COUNTY filed 10/09/18 – Three Hundred and Eighty-two days (382 days) overdue. We complied with her Order and answered within 30 days, 382 days later, nothing. It is Bias. Judge Claire C. Cecchi's actions are inappropriate, oppressive, Unacceptable Behavior.

4.   The Supreme Court has held that due process has "a limited role to play in protecting against oppressive delay." United States v. Lovasco, 431 U.S. 783, 789 (1977). Such violations occur only where the delay "violates those fundamental conceptions of justice which lie at the base of our civil and political institutions ... and which define the community's sense of fair play and decency." Id. at 790 (quotations omitted). An accused must demonstrate "actual and substantial prejudice," at which point the burden shifts to the government to show the reason for its delay was not improper. United States v. Henderson, 337 F.3d 914, 920 (7th Cir. 2003); see also United States v. Sowa, 34 F.3d 447, 450–51 (7th Cir. 1994) (discussing burden shifting). To demonstrate actual and substantial prejudice, "[I]t is not enough to show the mere passage of time nor to offer some suggestion of speculative harm; rather, the defendant must present concrete evidence showing material harm." Wilson v. McCaughtry, 994 F.2d 1228, 1234 (7th Cir. 1993) (quotation omitted).

## V.   ETHICAL PRINCIPLES

Prompt decision making is part of 'Judging 101', and is covered in every judicial handbook.[1] "Judges should endeavour to perform all judicial duties, including the delivery of

---

[1] *Duhaime, Lloyd (June 9, 2013). "Delay in Reasons for Judgment: Justice Delayed is Justice Denied". Retrieved April 17, 2020*

reserved judgments, with reasonable promptness."[2] To a similar effect in Canada: "A judge shall dispose of all judicial matters promptly...."[3]

Applicable to federal judges and effective March 12, 2019, the Code of Conduct for United States Judges elucidates "the ethical canons that apply to federal judges and provides guidance on their performance of official duties and engagement in a variety of outside activities." Beyond general exhortations, it has little to say about delay in dispositions:

"Canon 3: A Judge Should Perform the Duties of the Office Fairly, Impartially and Diligently

"The duties of judicial office take precedence over all other activities. The judge should perform those duties with respect for others, and should not engage in behavior that is harassing, abusive, prejudiced, or biased. The judge should adhere to the following standards:

"(A) Adjudicative Responsibilities.

"(1) A judge should be faithful to, and maintain professional competence in, the law and should not be swayed by partisan interests, public clamor, or fear of criticism.

"(2) A judge should hear and decide matters assigned, unless disqualified, and should maintain order and decorum in all judicial proceedings. ...

"(5) A judge should dispose promptly of the business of the court."[4]

As a commentator for the American Judicature Society noted:

"Unjustifiable delay in court proceedings, particularly in deciding cases, can have a significant impact on the parties and reflects adversely on the judicial system. Under Canon 3B(8)of the 1990 model code, a judge is required to "dispose of all judicial matters promptly, efficiently and fairly." Commentary to the 1990 model code reminds judges that "in disposing of matters promptly,

---

[2] *"Model Code of Judicial Conduct, Canon 3(8)". American Bar Association. 2004.*

[3] Canadian Judicial Council, Ethical Principles for Judges (1998), Chapter 4, article 3.

[4] *"Code of Conduct for United States Judges". Retrieved April 22, 2020.*

efficiently and fairly, a judge must demonstrate due regard for the rights of the parties to be heard," while a comment to the 2007 model code cautions that "the duty to hear all proceedings with patience and courtesy is not inconsistent with the duty imposed . . . to dispose promptly of the business of the court. Judges can be efficient and businesslike while being patient and deliberate." To ensure prompt and efficient disposition of cases, commentary to the code advises judges to:

- seek the necessary docket time, court staff, expertise, and resources,
- monitor and supervise cases,
- devote adequate time to judicial duties,
- be punctual in attending court,
- expeditiously decide matters under submission, and
- take reasonable measures to ensure that court officials, litigants, and their lawyers cooperate to that end."[5]

Speedy justice in the findings and within the confines of the case, facts and the law is a stated goal of many legal systems.[6] Conversely, "[D]epriving quick and certain justice to the litigants ... reinforces the negative images of the judicial system...."[7]

---

[5] *Gray, Cynthia (2009) [1999]. "Ethical Standards for Judges". Handbook for members of judicial conduct commission: how judicial conduct commissions work: ethical standards for judges. Chicago Alexandria, Virginia State Justice Institute: American Judicature Society, State Justice Institute: 14–15. ISBN 0-938870-90-4.*

[6] *"Speedy Justice". uslegal.com. Retrieved April 22, 2020. Speedy justice refers to the speediness along with prudence and wisdom observed in the final disposition of cases.*
[7] *Shaman, Jeffrey M.; Lubet, Steven; Alfini, James J. (1995). "6.02". Judicial Conduct and Ethics (2nd ed.). Charlottesville, Virginia: LexisNexis, Michie Law Publishers. pp. 168–183. ISBN 9780327100171. ISBN 0327100176*

A long list of potential excuses for extended decisional slow motion are disallowed.[8] And in weighing the wrongfulness of the delay, there are a multiplicity of factors that may come into play.[9]

## VI.   LEGISLATIVE PRESCRIPTIONS

Passed in 1990, the United States Code, Title 28, §476(a)(3) has a "novel process of making public the names of judges" who let cases go too long without decisions or judgment.[10] Reports must be filed if motions and trials are in submission and have been pending more than six months without decision; and cases that have not been ended within three years of filing.[11] See Civil Justice Reform Act, which tries to deal with lifetime tenured judges, judicial efficiency, judicial independence, separation of powers and legislative oversight.

## VII.   CONCLUSION

There are many laws and rules for a Judge to Perform the Duties of the Office Fairly, Impartially and Diligently, to include the Constitutional provisions of the 5th and 14th Amendment Due Process clauses as to which I believe I am being prejudiced for being a prose litigant and being right, and exercising my rights.

---

[8] "Delay is not excused by: •participation in voluntary, extra-judicial, professional activities, • dilatory or inadequate staff the judge's belief that a delayed decision is in the best interests of the parties, • the judge's heavy workload,• the judge's temporary, disabling condition, or • dilatory counsel.

[9] "...• whether a rule establishes a time limit for deciding the case, • whether the judge failed to report the cases as undecided, as required by rule or statute, • whether the judge's record indicates a pattern of unreasonable delay or deliberate neglect, • whether a particular instance of delay so lacks legitimate justification that it is willful,• whether a judge has defied administrative directives or attempted to subvert the system, • whether the delay caused harm to the parties, or • whether the case is of a type, for example child custody matters, where expeditious disposal is particularly desirable."

[10] *Duhaime, Lloyd (June 9, 2013). "Delay in Reasons for Judgment: Justice Delayed is Justice Denied". Retrieved April 17, 2020*

[11] *"United States Code, Title 28, §476(a)(3)". Legal Information Institute, Cornell Law School. Retrieved April 22, 2020.*

The justice system does not want a prose to win. These are simple cases; I see no other reason for such a long oppressive delay other than to spoil the cases and bias me.

Judges can be removed upon proof of judicial misbehavior without the need for a wholly independent impeachment procedure. Judge Claire C. Cecchi is required to be removed for bad behavior evidenced in plaintiff's cases.

This is based on the Constitution according to its original meaning. Not everyone accepts this. It may be that our political community has come to prefer that impeachment serve as the exclusive method for removing judges. This is a mistaken supposition that the impeachment-only position is forced upon us by the Constitution itself. For further reading see footnote[12].

I certify that all the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Respectfully submitted.

Dated this __3_ day of __August__ . 2020.

WILLIAM F KAETZ
437 Abbott Road
Paramus NJ 07652
201 753 1063
Plaintiff

---

[12] Professor Prakash is the Herzog Research Professor of Law at the University of San Diego. Professor Smith is the Warren Distinguished Professor of Law at the University of San Diego. Preferred citation: Saikrishna Prakash & Steven D. Smith, Removing Federal Judges Without Impeachment, 116 Yale L.J. Pocket Part 95 (2006), http://yalelawjournal.org/forum/removing-federal-judges-without-impeachment.

Removing Federal Judges Without Impeachment accompanies Saikrishna Prakash & Steven D. Smith, How To Remove a Federal Judge, 116 Yale L.J. 72 (2006).