UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILLIAM F. KAETZ,** | Civil Action No.: 19-cv-08100 |
| **Plaintiff,** | |
| v. | **OPINION** |
| **THE UNITED STATES, et al.,** | |
| **Defendants.** | |

**McNulty, District Judge.**

Plaintiff William F. Kaetz, appearing *pro se,* brings this suit against the United States, governors of all 50 States and certain U.S. territories, Former Secretary of State Hillary Clinton, Former President Barack Obama, Black Lives Matter, and Antifa, alleging violations of his civil rights under 42 U.S.C. § 1983 and various violations of constitutional provisions. He alleges that the defendants have allowed "invasions of Marxism to change our form of government," and alleges that "Communists, Socialists, Muslims and Totalitarians will not assimilate to our Constitutional Republic Form of Government" unless the defendants cease "allowing demonstrations of advocacy" in support of said religious and political beliefs. (2AC ¶ 7.)[1] He also challenges actions taken by the defendants in response to the Coronavirus pandemic, which Mr. Kaetz asserts is a "hoax." (*Id.* ¶ 11.)

The Constitution limits this court's authority; it may hear only concrete cases and controversies between parties. That, in broad terms, is the line that

---

[1] For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| 2AC | = | Mr. Kaetz's Second Amended Complaint (DE 32-1) |
| Mot. | = | Mr. Kaetz's Motion to Reopen the Case (DE 32) |

Article III of the Constitution has drawn, and this court does not have the power to cross it. More generalized grievances about politics, politicians, or the political system, like those asserted by Mr. Kaetz, are not properly heard by a federal court. They are reserved for the voters, and the political process. So it is not for me to pass on the merit, or not, of Mr. Kaetz's concerns; I must dismiss them as legal claims because, no matter how meritorious or deeply felt, I do not have the power to hear them.

Judge Cecchi, to whom the case was previously assigned, dismissed the first amended complaint, but granted leave to file a proposed second amended complaint within 30 days. (DE 31) Now before the Court is Mr. Kaetz's second amended complaint (2AC), filed as an attachment to his Motion to Reopen the Case (Mot.) (DE 32); a Motion for Recusal (DE 33); and two motions to expedite this case (DE 34, 35). For the reasons that follow, the motion to reopen the case is denied, Mr. Kaetz's second amended complaint is dismissed, and the other motions are denied as moot.

## I.  BACKGROUND

As noted, this is Mr. Kaetz's second amended complaint. I will briefly describe his prior filings.

### A.  Procedural History

Mr. Kaetz first initiated this action on March 7, 2019 by filing a civil rights complaint under 42 U.S.C. § 1983, which alleged that the defendants had violated his Due Process rights and their oaths of offices, as well as committed discrimination against him based on his status as a citizen of the United States. (DE 1.) The case was initially assigned to Judge Claire C. Cecchi, who dismissed the complaint without prejudice on October 4, 2019, as Mr. Kaetz lacked standing. (DE 24 (citations omitted).) Judge Cecchi granted Mr. Kaetz leave, however, to file an amended complaint addressing the standing deficiencies. (DE 25.)

Mr. Kaetz filed an amended complaint (DE 26-3), and Motion to Reopen the Case (DE 26), on November 4, 2019. He then filed a brief in support of his amended complaint on January 6, 2020. (DE 27–28.) Thereafter, on February

21, 2020, Mr. Kaetz filed an "Expediated Freedom of Information Act Request Codified at U.S.C. Title 28. Judicial Administration Chapter I. Department of Justice Part 16 Production or Disclosure of Material or Information." (DE 29.) Then, on May 29, 2020, Mr. Kaetz filed a document titled "General Correspondence Referencing the Amended 42 U.S.C. § 1983 Complaint in Accordance with the Order of October 4, 2019 and Updated Amendment to the Complaint." (DE 30.)

On June 29, 2020, Judge Cecchi dismissed Mr. Kaetz's amended complaint without prejudice as it "mirror[ed] his original pleading in most respects." (DE 31 at 1.) Specifically, Judge Cecchi found that the amended complaint asserted claims against the same defendants and contained the same causes of action. (*Id.* at 1–2.) While the Judge noted the new section titled "Direct Harm to Plaintiff," detailing his involvement in several other unrelated criminal and civil cases, she found that Mr. Kaetz's new allegations "do not provide plausible facts or allegations that link the asserted failure of all elected federal and state officials to follow their oaths of office to a direct injury suffered by Plaintiff. These allegations instead describe distinct legal actions involving different parties and different factual matters than those present here, and thus do not help Plaintiff cure the deficiencies identified in the Complaint." (*Id.* at 3.) In sum, Judge Cecchi concluded that Mr. Kaetz's amended complaint failed due to lack of standing, just as the initial complaint had. (*Id.* at 3–4.) The Court again granted Mr. Kaetz leave to amend his complaint to cure the pleading deficiencies with respect to standing. (*Id.* at 4.)

On July 27, 2020, Mr. Kaetz filed his second amended complaint (2AC) and Motion to Reopen the Case (Mot.), arguing that he has complied with the Court's June 29, 2020 order. Then, on August 7, 2020, Mr. Kaetz filed a Motion for Recusal, seeking to remove Judge Claire C. Cecchi from the case. (DE 33.) Mr. Kaetz has also since filed a Motion to Expedite the Case on September 25, 2020 (DE 35), and an Emergent Motion to Expedite the Case on October 5, 2020 (DE 34). This case was reassigned to me on October 22, 2020. (DE 36.)

B. **The Second Amended Complaint**

Mr. Kaetz argues that his second amended complaint cures the defects identified in Judge Cecchi's June 29, 2020 order dismissing its predecessor for lack of standing. As noted above, Mr. Kaetz's first amended complaint was brought pursuant to 42 U.S.C. § 1983 against all members of the federal and state executive, legislative, and judicial branches, as well as Hillary Clinton and Barack Obama, for violations of the oath of office and Mr. Kaetz's state and federal due process rights, and for nationality discrimination against Mr. Kaetz. (DE 23-1.)

As Judge Cecchi instructed Mr. Kaetz, any second amended complaint, to be accepted, must cure the pleading deficiencies that were identified in the initial and amended complaints. (DE 24, 31.) That is, in order for Mr. Kaetz to have standing sufficient to confer upon a court jurisdiction to hear his claims, he must plausibly plead how the alleged violations of the oath of office by elected officials caused a concrete and particularized injury to himself, as opposed to the public at large. (DE 31.)

I will now review the second amended complaint to the extent it contains discernible changes from the amended complaint.

The second amended complaint adds several new defendants: (1) the governors of all 50 states, American Samoa, Guam, the Northern Mariana Islands, and the U.S. Virgin Islands, in their official and individual capacities; (2) Black Lives Matter; and (3) Antifa.

Mr. Kaetz has also added new legal causes of action. He now brings six claims for relief in total: (1) a claim based on the "implied right to action" pursuant to Congressional intent, based on violations of the oath of office; (2) violations of Article 4, Section 4 of the United States Constitution, which guarantees a republican form of government; (3) violations of the Due Process clause of the Fourteenth Amendment and the Due Process clauses of the Fourteenth and Fifth Amendments, as well as their state-constitutional analogues; (4) nationality discrimination against Mr. Kaetz based on his status

4

as a citizen of the United States; (5) violation of unenumerated rights in the Ninth Amendment; and (6) violation of the public trust doctrine. (2AC at 3.)

Specifically, Mr. Kaetz claims that his Due Process and Equal Protection rights, unenumerated rights, public trust rights, and his right to a republican form of government have been violated because the defendants have allowed "invasions of Marxism to change our form of government" and have engaged in nationality discrimination against him based on his status as a United States citizen. (*Id.* ¶ 4, 6.)

He further alleges that the defendants have violated their oaths of office by undertaking various preventive measures against the coronavirus pandemic without evidence that they would be effective, and by discriminating against nonessential businesses. (*Id.* ¶ 11.) He further alleges discrimination based on the defendants permitting "Black Lives Matter and Antifa groups [to] pillage and ravish our cities, disband the police, destroy our heritage and history." (*Id.*) He claims these acts have infringed on his liberties "by placing [him] in a position of danger with a destabilized government system and dangerous levels of a Communist atmosphere," and have harmed his "dignity, including his capacity to provide for his basic human needs, safely raise his family, practice his religious and spiritual beliefs, maintain his bodily integrity, and lead a life with access to water, shelter, food, good health, financial stability, live without fear, and freedom." (*Id.* ¶ 81.)

Mr. Kaetz also brings civil rights claims against Governor Phil Murphy of New Jersey, challenging his executive orders, and alleging, *inter alia*, that Governor Murphy "has created an unacceptable tyranny in the state of New Jersey . . . . His attempt to assert himself as tyrant has restricted and denied the liberty of all New Jers[y]ans and has violated the civil rights of the plaintiff. The plaintiff can fairly represent the interests of the class of nonessential New Jers[y]ans similarly situated."[2] (2AC ¶¶ 38–44.)

---

[2]     To the extent Mr. Kaetz may intend to prosecute this case as a class action, the Court notes that "[a]lthough an individual may represent herself or himself *pro se*, a

Mr. Kaetz seeks relief in the form of, *inter alia*, $20 million dollars in damages from each defendant, injunctions against further violations of the constitution and barring further states of emergency based on the coronavirus pandemic, an order disbanding Black Lives Matter and Antifa and barring any Black Lives Matter or Antifa activities going forward, the purgation of Socialists and all anti-Americans from government employment and educational positions, and an order establishing an enforceable national plan to phase out socialist laws and enforce teachings that Mr. Kaetz believes will protect a constitutional republican form of government. (*Id.* at 37–39.) The second amended complaint also contains nine separate prayers for relief for Mr. Kaetz's claims against Governor Murphy. (2AC at 39–40.)

### C. Mr. Kaetz's Personal Stake and His Injury in This Dispute

As previously noted, Mr. Kaetz's prior complaints were dismissed because they failed to make out a basis for standing. He thus devotes a section of this new complaint to his personal stake and injury resulting from the alleged violations detailed above. (*Id.* at 4.)

Mr. Kaetz asserts various injuries based on the defendants' alleged violations of his Constitutional rights: (1) violations of the Constitution "violate and jeopardize and harm [Mr. Kaetz's] freedom and his Unalienable Rights;" (2) "Nationality Discrimination against [Mr. Kaetz], a citizen of the United States of America, a national of New Jersey and of the United States;" (3) "usurpations" of the Constitution have harmed Mr. Kaetz; (4) "allowing known enemies of [Mr. Kaetz's] nation in [Mr. Kaetz's] nation's official offices . . . infringe and harms and jeopardizes [Mr. Kaetz's] rights and freedom . . . and discriminates against [Mr. Kaetz's] nationality;" (5) Defendants' failure "to protect the States and the United States of Domestic Violence of Communism, Socialism, Islamic and Totalitarianism Invasions of State and Federal Governments . . . infringes and harms and jeopardizes [Mr. Kaetz's] rights and

---

non-attorney may not represent other parties in federal court." *Murray on behalf of Purnell v. City of Phila.*, 901 F.3d 169, 170 (3d Cir. 2018).

freedom . . . and discriminates against [Mr. Kaetz's] nationality;" and (6) Hillary Clinton and Barack Obama "committed crimes and violations of oath of office," which "harmed and jeopardized [Mr. Kaetz's] safety and welfare and his Unalienable Rights and freedom." (2AC ¶¶ 3–6, 9–10.)

He also alleges that the defendants have allowed "civil unrest that have and will cause physical and financial harm, has caused mental and physical stress, and jeopardizes the rights and freedom of every American." (*Id.* ¶ 12.) He concludes that the defendants have "placed [him] in a dangerous situation, continue to infringe upon Plaintiff's constitutionally protected rights, and have abrogated their duty of care to ensure Plaintiff's reasonable safety." (*Id.* ¶ 14.)

Later in the second amended complaint, Mr. Kaetz makes other allegations which could be read as descriptions of his injuries: he is unable to peaceably assemble and petition the government; is, as a carpenter by trade, unable to visit and purchase needed goods from nonessential businesses; and has been unable to pursue his livelihood. (*Id.* ¶¶ 38–44.)

## II.   STANDARD OF REVIEW — SUBJECT MATTER JURISDICTION

"[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977). A necessary corollary is that the court can raise sua sponte subject-matter jurisdiction concerns." *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72, 76–77 (3d Cir. 2003).

Jurisdiction must be established as a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). A motion to dismiss pursuant to Rule 12(b)(1) may be brought as a facial or factual challenge. *See Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). Where the motion challenges jurisdiction on the face of the complaint, the court only considers the allegations of the complaint and documents referred to therein in the light most favorable to the plaintiff. *Gould Elecs., Inc. v. United States*, 220 F.3d 169, 176

(3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

By contrast, where the existence of subject matter jurisdiction is challenged factually, "no presumptive truthfulness attaches to the plaintiff's allegations," and the court may consider evidence outside the pleadings to satisfy itself of its power to hear the case. *Id.* Thus "Rule 12(b)(1) does not provide plaintiffs the procedural safeguards of Rule 12(b)(6), such as assuming the truth of the plaintiff's allegations." *CNA v. United States*, 535 F.3d 132, 144 (3d Cir. 2008).

### A.   Standing

"It is a fundamental precept that federal courts are courts of limited jurisdiction." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). "This notion is derived from the United States Constitution itself, which limits the Court's subject matter jurisdiction to justiciable 'cases' or 'controversies.' The federal courts' limited jurisdiction 'is founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Taylor v. Wolf, et al.*, No. 20-39, 2020 WL 5893845, at *1 (D. Mont. Oct. 5, 2020) (quoting U.S. Const., Art. III, § 2 and *Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009)).

Under Article III, § 2 of the Constitution, the party invoking federal jurisdiction has the burden of proving:  (1) "an injury in fact;" (2)  "a causal connection between the injury and the conduct complained of . . . the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party;" and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable [court] decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Injury in fact, "the first and foremost of standing's three elements," is a constitutional requirement. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted).  To establish injury in fact, a Mr. Kaetz must show

8

that he "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan*, 504 U.S. at 560). "For an injury to be 'particularized,' it 'must affect the Mr. Kaetz in a personal and individual way.'" *Spokeo*, 136 S. Ct. at 1548 (citations omitted); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (citation omitted) ("Art. III requires the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury.'"). Finally, "[p]articularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'" *Spokeo*, 136 S. Ct. at 1548.

Here, notwithstanding Mr. Kaetz's submission of a second amended complaint, and even liberally construing the allegations contained therein,[3] the Court finds that Mr. Kaetz still lacks standing to bring this action which therefore deprives this Court of subject matter jurisdiction.

As previously noted, Mr. Kaetz asserts that the defendants have "harmed" and "jeopardized" his "freedom" and "unalienable rights," and have placed him "in a dangerous situation," by violating their oaths of office, denying him a republican form of government, and discriminating against him because he is a United States citizen. He further warns that Americans will suffer "physical and financial harm, [and] mental and physical stress" as a result of civil unrest. These allegations do not remedy the standing deficiencies previously identified by this Court, as Mr. Kaetz has not alleged a legally cognizable injury resulting from Defendants' alleged violations of the oath of office.

---

[3] *Pro se* complaints are liberally construed and held to less stringent standards than pleadings drafted by lawyers. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (2013) ("[P]*ro se* litigants still must allege sufficient facts."). A *pro se* complaint will be dismissed if "it appears 'beyond doubt that the Mr. Kaetz can prove no set of facts in support of his claim which would entitle him to relief.'" *Mishra v. Fox,* 197 F. App'x 167, 168 (3d Cir. 2006) (citation omitted).

9

Specifically, Mr. Kaetz has not explained how any of the complained-of acts might have been directed against him in particular, or what injury, particular to him, he has suffered as a result of Defendants' actions. As with the amended complaint, Mr. Kaetz's claims are grounded in generalized disagreement with the conduct of elected officials. He claims that such actions infringe his rights, although not in any way that distinguishes his status from that of the citizenry generally. Notwithstanding his citation to several constitutional provisions, Mr. Kaetz's allegations do not state a legally cognizable injury. *See Lujan*, 504 U.S. at 573–74 ("We have consistently held that a plaintiff raising only a generally available grievance about government— claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). As the forthcoming analysis will demonstrate, the Supreme Court's standing doctrine compels the conclusion that Mr. Kaetz's claimed injuries are insufficient to support standing under Article III of the U.S. Constitution.

First, Mr. Kaetz's allegations that his rights and freedom have been injured by the government are insufficient to demonstrate a particularized injury. The Supreme Court has repeatedly held that such generalized grievances, even when framed as constitutional violations, do not confer standing and that in fact the Court is constitutionally prohibited from hearing such cases. *See, e.g., Ex parte Levitt*, 302 U.S. 633, 636 (1937) (dismissing case asserting that the appointment of Justice Black violated the Ineligibility Clause, Art. I, § 6, cl. 2, as "[i]t is an established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained, or is immediately in danger of sustaining, a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public"); *United States v. Richardson*, 418 U.S. 166, 176–77 (1974) (quoting *Ex parte Levitt*, 302 U.S. at 636) (dismissing taxpayer suit challenging

government's failure to disclose expenditures of the Central Intelligence Agency under Art. I, § 9, cl. 7, as claim was an impermissible "generalized grievance . . . since the impact on [the plaintiff] is plainly undifferentiated and 'common to all members of the public'"); *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 217, 220–21 (1974) (dismissing taxpayer challenge under the Incompatibility Clause, Art. I, § 6, cl. 2, to Members of Congress holding commissions in the military Reserves and as "that claimed nonobservance, standing alone, would adversely affect only the generalized interest of all citizens in constitutional governance, and that is an abstract injury" and reaffirming the principle "that standing to sue may not be predicated upon an interest of the kind alleged here which is held in common by all members of the public, because of the necessarily abstract nature of the injury all citizens share"); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 575–76 (1992) (citing *Allen v. Wright*, 468 U.S. 737, 753 (1984) and *Valley Forge*, 454 U.S. at 483) ("Since *Schlesinger* we have on two occasions held that an injury amounting only to the alleged violation of a right to have the Government act in accordance with law was not judicially cognizable because 'assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning.'").

Moreover, the Supreme Court has specifically held that claims based on "nonobservance of the Constitution," like those Mr. Kaetz advances here, do not set forth a sufficient injury to support standing. *See Schlesinger*, 418 U.S. at 217 (holding that claim predicated on nonobservance of the Constitution was insufficient for standing as "[t]he very language of respondents' complaint, reveals that it is nothing more than a matter of speculation whether the claimed nonobservance of that Clause deprives citizens of the faithful discharge of the legislative duties of reservist Members of Congress. And that claimed nonobservance, standing alone, would adversely affect only the generalized interest of all citizens in constitutional governance, and that is an abstract

11

injury"); *Valley Forge*, 454 U.S. at 482 ("The Court of Appeals was surely correct in recognizing that the Art. III requirements of standing are not satisfied by 'the abstract injury in nonobservance of the Constitution asserted by . . . citizens.'") (quoting *Schlesinger*, 418 U.S. at 223 n.13).

Furthermore, the Supreme Court "repeatedly has rejected claims of standing predicated on 'the right, possessed by every citizen, to require that the Government be administered according to law.'" *Valley Forge*, 454 U.S. at 482–83 (citation omitted). This is because "[s]uch claims amount to little more than attempts 'to employ a federal court as a forum in which to air . . . generalized grievances about the conduct of government.'" *Id.* at 483 (citation omitted); *see also Allen*, 468 U.S. at 754 ("[A]n asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court.").

Mr. Kaetz's allegations match the claims ruled out by the above precedent. His allegations that the defendants have committed nationality discrimination against him as an American, violated their oaths of office, and violated his right to a republican form of government, are no more than mere demands that the government be administered in the manner that he considers appropriate, but are untethered to a particular harm which Mr. Kaetz has suffered. He claims that the defendants are obligated by the Constitution to resist Marxism, Socialism, Communism, Islam, or Black Lives Matter, but gives no explanation as to why he in particular, more than anyone else, has been injured by their failure to do so. Thus this complaint is fundamentally an "assertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently," and such complaints "cannot alone satisfy the requirements of Art. III without draining those requirements of meaning." *Lujan*, 504 U.S. at 576. Similarly, his claim of discrimination is based on the defendants' alleged failure to prevent actions by Black Lives Matter and Antifa, but Mr. Kaetz has alleged no identifiable individual injury he has suffered. Mr. Kaetz is alleging a political grievance or platform, not a legal

12

claim. The remedy for such generalized grievances lies in citizens' exercising their right to vote, not in the courts, which adjudicate concrete cases between parties.

Second, even if I construed Mr. Kaetz's warning that Americans will suffer stress or harm due to civil unrest as alleging that he in particular has suffered such stress, that too would not constitute a cognizable injury. The Supreme Court has rejected what it has termed "offended observer" standing. *Valley Forge*, 454 U.S. at 485–86 ("Although respondents claim that the Constitution has been violated, they claim nothing else.  They fail to identify any personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees.  That is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms."); *see also Am. Legion v. Am. Humanist Ass'n*, 139 S. Ct. 2067, 2098 (2019) (Gorsuch, J., concurring) (citations omitted) ("This 'offended observer' theory of standing has no basis in law.  Federal courts may decide only those cases and controversies that the Constitution and Congress have authorized them to hear.  . . .  Unsurprisingly, this Court has already rejected the notion that offense alone qualifies as a 'concrete and particularized' injury sufficient to confer standing.  We could hardly have been clearer: 'The presence of a disagreement, however sharp and acrimonious it may be, is insufficient by itself to meet Art. III's requirements.'").

Third, Mr. Kaetz's claim that he has been placed in a "dangerous situation" is a classic example of a "conjectural or hypothetical" injury. First, Mr. Kaetz offers no facts supporting his claim that he is in a more dangerous situation, apart from vague generalities about Antifa and Black Lives Matter "pillag[ing] and ravish[ing] our cities." (2AC ¶ 11.) Even assuming Mr. Kaetz inhabited such a city, however, he would still lack standing. He has not been injured in such unrest and offers only "hypothetical speculations concerning the possibility of future injury." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 43 (3d

13

Cir. 2011); *see also Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (possible future injury is "too speculative for Article III purposes" unless it is "*certainly* impending"). As discussed above, Mr. Kaetz is not asserting a personal injury that a court may address; he is fundamentally asserting that government law enforcement policies need to be changed; whatever injury or risk he asserts cannot be distinguished from that of the public generally. *Lujan*, 504 U.S. at 575–76.

In sum, Supreme Court precedent dictates that Mr. Kaetz lacks standing to challenge the conduct complained of in the second amended complaint. *See, e.g.*, *Sharma v. Trump*, No. 20-944, 2020 WL 5257709, at *2 (E.D. Cal. Sept. 3, 2020) (dismissing for lack of standing where plaintiff "d[id] not allege that he sustained a personal injury" and instead "merely claim[ed] that President Trump's actions have harmed the nation and its citizens"). Because Mr. Kaetz lacks standing, the Constitution prohibits the Court from hearing his claims and instructs the Court to dismiss the second amended complaint for lack of subject matter jurisdiction. *See Penkoski v. Bowser*, No. 20-1519, 2020 WL 4923620, at *10 (D.D.C. Aug. 21, 2020) (citation omitted) ("Standing is not a suggestion. Its requirements are 'essential to preserving the separation of powers and limited judicial role mandated by the Constitution.'"); *see also Spokeo*, 136 S. Ct. at 1552 (Thomas, J., concurring) ("[S]tanding doctrine keeps courts out of political disputes by denying private litigants the right to test the abstract legality of government action.").

### B. Mr. Kaetz's Challenges to COVID-19 Executive Orders

The Court also finds that Mr. Kaetz lacks standing to assert any amended claims regarding Governor Murphy's executive orders, and the executive orders of governors across the United States, for substantially the same reasons just articulated. The Court reaches the same conclusion because Mr. Kaetz's allegations are again generalized grievances with the conduct and response of Governor Murphy and the other governors as elected officials. They do not set forth facts identifying a cognizable personal injury to Mr. Kaetz.

Without facts alleging how this conduct has harmed Mr. Kaetz, I cannot hear these claims.

"The constitutionally mandated standing inquiry is especially important in a case like this one, in which taxpayers seek 'to challenge laws of general application where their own injury is not distinct from that suffered in general by other taxpayers or citizens.'" *Hein v. Freedom from Religion Found., Inc.*, 551 U.S. 587, 598 (2007) (citation omitted). The party invoking federal jurisdiction "must be able to show, not only that the [challenged] statute is invalid, but that he has sustained or is immediately in danger of sustaining some direct injury as the result of its enforcement, and not merely that he suffers in some indefinite way in common with people generally." *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 488 (1923). Thus, "a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy." *Lujan*, 504 U.S. at 573–74.

Accordingly, Mr. Kaetz lacks standing to challenge Governor Murphy's executive orders. Those measures apply equally to all New Jersey residents, and he has not alleged that they have caused him to suffer a distinct, particularized injury. Here, Mr. Kaetz claims that the executive orders violate his rights, including his "ability to peaceably assemble and to petition the government," "his ability be a political activist," and "his ability pursue his livelihood" as a carpenter. (2AC ¶¶ 39, 41–42.)  Yet these allegations raise only a generally available grievance about government for alleged constitutional violations felt equally by all people in New Jersey, which cannot support standing. *See Lujan*, 504 U.S. at 573–74. While Mr. Kaetz claims that as a carpenter working in New Jersey, his "rights to visit and purchase needed goods and services from nonessential businesses have been, restricted, and

15

denied," he offers no facts or circumstances to support this allegation.[4] (2AC ¶ 40.) Nor has he made any allegations that he was prevented from attending a particular peaceful assembly, submitting a petition or engaging in political activism. Furthermore, and in any event, he has not shown that his injuries are "distinct from that suffered in general by other taxpayers or citizens." *Hein*, 551 U.S. at 598. This is especially true to the extent Mr. Kaetz challenges COVID-19 measures enacted in states and territories other than New Jersey, as it is especially unclear how such measures have caused or will immediately cause him injury. *See Mellon*, 262 U.S. at 488.

In sum, Mr. Kaetz has not pled a cognizable injury, as his allegations do not show how the executive orders have affected him in a "personal and individual way." *See Nowlin v. Pritzker*, No. 20-1229, 2020 WL 5850844, at *5 (C.D. Ill. Oct. 1, 2020) ("[S]tanding must be based on an injury more particularized and more concrete than the mere assertion that the 'Governor's executive orders deprived plaintiffs of First Amendment and other fundamental rights and take their property without just compensation.'"). Other courts have reached the same conclusion and rejected similar challenges to state COVID-19 measures based on generalized claims. *See, e.g., Thomas v. Baker*, No. 20-11438, 2020 WL 4583847, at *2 (D. Mass. Aug. 10, 2020) ("[T]he complaint does not allege any facts from which it can be reasonably inferred that Thomas has suffered [a cognizable injury]. He complains that the executive orders . . . issued in response to the COVID-19 pandemic violate the rights of the 'People' under the First, Fourth, Eighth, Ninth, and Tenth amendments to the United States Constitution. But he does not suggest that he personally has been injured by the executive orders in question."); *Baber v. Newsom*, No. 20-5996, 2020 WL 5875018, at *2, 5 (C.D. Cal. July 15, 2020) (dismissing complaint

---

[4] Indeed, even New Jersey's most aggressive executive orders, which are no longer in place, did not prohibit Mr. Kaetz from going to hardware stores to purchase supplies, or from performing carpentry work at the request of a home or business owner. *See* New Jersey Executive Order 108 ¶ 6(g) (hardware stores remain open as essential businesses, and the order otherwise only directs the closure of certain brick-and-mortar businesses serving the public, which Mr. Kaetz does not allege that he operates).

alleging that governor's "declaration of a State of Emergency in response to the COVID-19 pandemic is 'based on . . . patently false' assumptions," finding that "plaintiff's primary grievance is that she, along with the people of California and the United States generally, are suffering restraints of their liberty due to restrictions imposed by the State and Federal governments in response to the COVID-19 pandemic," and that this "allegation that she is suffering these restraints along with all other Californians, and/or all other Americans is insufficient to establish that she has standing to seek relief from the laws and orders at issue"); *Maxwell v. Lee*, No. 20-1093, 2020 WL 5670115, at *2 (W.D. Tenn. June 29, 2020) (citation omitted) ("While Maxwell claims that he was not able to leave his home at night and that he suffered mental anguish, anxiety, and claustrophobia . . . his complaint raises only 'a generally available grievance about government' for alleged constitutional violations felt equally by all Tennesseans and therefore 'does not state an Article III case or controversy.'").

Accordingly, as Mr. Kaetz lacks standing to challenge the COVID-19 measures, the Court is without subject matter jurisdiction and must dismiss the second amended complaint.

### C. The Second Amended Complaint is Dismissed with Prejudice

Amendment after dismissal is granted unless there is "bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Lundy v. Adamar of N.J., Inc.*, 34 F.3d 1173, 1196–97 (3d Cir. 1994) (citation omitted). Dismissal with prejudice is "appropriate if amendment would be inequitable or futile." *Hilton v. Whitman*, No. 04-6420, 2006 WL 1307900, at *2 (D.N.J. May 10, 2006).

Here, the Court finds that dismissal of the second amended complaint with prejudice is appropriate. Mr. Kaetz, given two opportunities, has failed to cure the deficiencies of the first complaint. Permitting him to amend for a third time would be futile. Mr. Kaetz's claims, all of which stem from grievances with elected officials, fail to allege a legally cognizable injury. They fundamentally

17

misapprehend the nature of a court case, which exists to adjudicate concrete disputes between parties, not to enact broad political agendas. As the above standing analysis demonstrates, granting Mr. Kaetz leave to amend would be futile in light of this jurisdictional deficiency. *See Sharma*, 2020 WL 5257709, at *3; *see also Valley Forge*, 454 U.S. at 474–75 (citation omitted) ("[E]ven when the Mr. Kaetz has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating 'abstract questions of wide public significance' which amount to 'generalized grievances,' pervasively shared and most appropriately addressed in the representative branches.").

No further amendments will be permitted. Mr. Kaetz's remedy, if any, lies in an appeal to the U.S. Court of Appeals for the Third Circuit.

### III. **MOTION FOR RECUSAL**

Mr. Kaetz also has filed a motion to recuse Judge Cecchi. (DE 33.) For reasons not relevant to this opinion, Judge Cecchi is no longer assigned to the case. The motion is therefore moot, and I deny it.

### IV. **CONCLUSION**

For the reasons set forth above, Mr. Kaetz's motion to reopen the case (DE 32) is denied, and his second amended complaint (2AC) is dismissed with prejudice. Mr. Kaetz's request for recusal (DE 33), Motion to Expedite the Case (DE 35), and Emergent Motion to Expedite the Case (DE 34), are denied as moot. An appropriate Order accompanies this Opinion.

DATED: December 15, 2020

/s/ Kevin McNulty

**Kevin McNulty, U.S.D.J.**